IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | NO. 18-502-1 |
| IRVING ADAMS | |

### MEMORANDUM OPINION

Defendant Irving Adams moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in consideration of the dangers posed by the COVID-19 pandemic. For the reasons that follow, his motion will be denied.

Adams is currently serving a five-year sentence at FCI Schuylkill for two counts of distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), & (b)(1)(C). Accounting for the 31 months he has been incarcerated, his 3 months of credit for good conduct, and his one-year credit for completing the Residential Drug Abuse Program, Adams' anticipated release date is July 10, 2022.

Adams submitted a *pro se* request for compassionate release on March 9, 2021. This request was denied without prejudice so that Adams could exhaust his administrative remedies. Thereafter, Adams sought and was denied compassionate release by the warden of FCI Schuylkill. On May 25, 2021, Adams submitted this *pro se* motion for compassionate release based on his obesity and hypertension, in light of the COVID-19 pandemic. The Government opposes the motion.

The First Step Act's amendments to Section 3582(c) "allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons." *United States v. Thorpe*, 2019 WL 6119214, at *1 (C.D. Ill. Nov. 18, 2019); *see* 18

1

U.S.C. § 3582(c)(1)(A) ("[T]he court, . . . upon motion of the defendant . . . may reduce the term of imprisonment. . . ."). Specifically, provided the defendant has exhausted his administrative remedies, Section 3582(c) permits a district court to reduce a defendant's sentence "after considering the factors set forth in section [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's applicable policy statement essentially mirrors this language, adding that a sentence reduction may be granted only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1)(A)(2).

Because Adams has exhausted his administrative remedies by unsuccessfully seeking compassionate release from the prison warden,[1] his sentence may be reduced if: 1) extraordinary and compelling circumstances warrant such a reduction; 2) he is not a danger to the safety of another person or to the community; and, 3) release is appropriate in consideration the relevant factors set forth in Section 3553(a).

Here, Adams fails to meet his burden of demonstrating that extraordinary and compelling circumstances warrant his immediate release. *See United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (explaining that it is the defendant's burden "to prove extraordinary and compelling reasons exist."). While Section 3582 does not define "extraordinary and compelling" circumstances that warrant relief, the Sentencing Commission's policy statement elaborates on the term in an application note. *See* U.S.S.G. § 1B1.13, cmt.

---

[1] *See* 18 U.S.C § 3582(c)(1)(A) (explaining that a defendant may bring a motion for compassionate release pursuant to this Act after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility).

n.1(A)-(D). According to U.S.S.G. § 1B1.13, a defendant's serious physical or medical condition is "extraordinary and compelling" if it "substantially diminishes [defendant's ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *Id.*

Adams' medical records confirm that he has a body mass index (BMI) of 34.7 and thus falls under the Center for Disease Control (CDC) definition of obese. *See* Center for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021). According to the CDC, obesity "can make you more likely to get severely ill from COVID-19" and the risk of severe illness "increases sharply with elevated BMI." *Id.* The Government therefore acknowledges that, under normal circumstances, Adams' condition would present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" in light of the COVID-19 pandemic. *See* U.S.S.G. § 1B1.13 n.1.

However, Adams was offered the Pfizer COVID-19 vaccine on February 10, 2021 and declined to receive it. There is no apparent medical reason Adams should not accept the vaccine, which was offered to him by BOP medical personnel. The Food and Drug Administration (FDA) approved the Pfizer vaccine for emergency use after extensive testing, finding that it was 95% effective in preventing infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 outcomes, such as Adams. *See* Food and Drug Administration, *Emergency Use Authorization*, https://www.fda.gov/media/144416/download (Dec. 11, 2020). Moreover, the CDC recommends that those with underlying medical conditions, including obesity, get a vaccine as soon as possible. *See* CDC, *People with Certain*

*Medical Conditions*.

Adams' only explanation for his refusal is that he does not know the long-term effects of the vaccine. Yet, Adams offers no scientific or other research to bolster his concerns. His speculative concerns about unspecified future effects cannot support his claim for release. Under these circumstances, Adams voluntary refusal to "provide self-care" and mitigate his risk of a severe COVID-19 outcome negates the otherwise compelling medical reason for his release.[2] *See, e.g., United States v. Jackson*, 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021) (explaining that while a petitioner who declined the vaccine is "within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. McBride*, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (explaining, where petitioner rejected the COVID-19 vaccine, that the "refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison"); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (denying relief where petitioner "declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically" by refusing the vaccine twice); *United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (concluding that petitioner's circumstances were not "extraordinary and compelling" where he refused the COVID-19 vaccine).

For the foregoing reasons, Adams' motion will be denied. An appropriate order follows.

**July 6, 2021**                                          **BY THE COURT:**

                                                          */s/ Wendy Beetlestone*
                                                          **WENDY BEETLESTONE, J.**

---

[2] Because Adams fails to demonstrate an extraordinary and compelling justification for his release, there is no need to consider the factors under § 3553(a). *See* 18 U.S.C. § 3582(c) (directing a court to consider the Section 3553(a) factors before reducing a term of imprisonment "*if* it finds that extraordinary and compelling reasons warrant such reduction" (emphasis added)).